IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge R. Brooke Jackson**

Civil Action No. 16-cv-00891-RBJ

LARRY FULLER,

      Applicant,

v.

WARDEN, Arkansas Valley Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.
_____

ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS
_____

      Applicant, Larry Fuller, has filed *pro se* an Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (Docket No. 1) challenging the validity of his criminal

conviction in the District Court of Weld County, Colorado.   Respondents have filed an

Answer (Docket No. 23).   Applicant did not file a Reply brief by the court-ordered

deadline, after being granted three extensions of time.   On January 17, 2017, Applicant

filed a Motion for Leave to File [Reply] Out of Time for Excusable Neglect/Justifiable

Excuse (Docket No. 37), along with a tendered Reply (Docket No. 38).   The Court will

grant the motion to file out of time.   Having considered the Application, Respondents'

Answer, the Applicant's Reply and the state court record, the Court will deny the

Application.

## I. BACKGROUND

On March 11, 2009, Applicant was convicted in Weld County District Court Case No. 08CR1227 of possession of chemicals or supplies to manufacture a controlled substance.   (Docket No. 10-2 at 2).   He was adjudicated a habitual offender and sentenced to an aggregate 96-year prison term with the Colorado Department of Corrections.   (*Id.* at 2, 13-14).

Applicant's conviction was affirmed on direct appeal in *People v. Fuller* (*Fuller I*), No. 09-1578 (Colo. App. Nov. 23, 2011) (unpublished).   (Docket No. 10-2).   The Colorado Supreme Court denied his petition for certiorari review on June 18, 2012. (Docket No. 10-8).

Applicant subsequently filed a motion for post-conviction relief pursuant to Colo. Crim. P. Rule 35(c), which was denied by the state district court on December 24, 2012. (Docket No. 10-1 at 7).   The Colorado Court of Appeals affirmed in *People v. Fuller* (*Fuller II*), No. 13-46 (Colo. App. Nov. 26, 2014) (unpublished).   (Docket No. 10-3). Applicant's petition for certiorari review was denied by the Colorado Supreme Court on August 24, 2015.   (Docket No. 10-13).

On April 19, 2016, Applicant filed his federal application under 28 U.S.C. § 2254 raising the following claims:

> 1.   Applicant's Fourth Amendment rights were violated when the trial court failed to suppress the contents of a suitcase that was seized illegally. (Docket No. 1 at 4-7).
>
> 2.   Applicant's Fifth Amendment due process rights were violated when the prosecution knowingly presented, and the trial court knowingly allowed the jury to hear, perjured testimony by a police officer.   (*Id.* at 7-9).

3. There was insufficient evidence to prove beyond a reasonable doubt that Applicant knew the suitcase contained chemicals for making methamphetamine. (*Id.* at 9-11).

4. Applicant's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), *California v. Trombetta*, 467 U.S. 479 (1984), and *Arizona v. Youngblood*, 488 U.S. 51 (1988), were violated by the police's failure to test the suitcase for fingerprints before having it destroyed. (*Id.* at 11-17).

5. Applicant's right to an impartial jury under the Sixth and Fourteenth Amendments was violated by the trial court's failure to inquire into the prosecutor's alleged improper and/or ex-parte disclosure of Applicant's prior convictions to the jury. (*Id.* at 17-19).

6. Applicant's right to an impartial jury under the Sixth and Fourteenth Amendments was violated by the trial court's mailing of letters to jurors, after the defense sought their contact information, ensuring they knew they were not required to speak with anyone about their jury service. (*Id.* at 19-21).

7. Applicant's right to a jury trial, as interpreted in *Blakely v. Washington*, 542 U.S. 296 (2004), was violated when the trial court, rather than a jury, made the sentence-enhancing determination that Applicant's conviction constituted his second conviction for such an offense. (*Id.* at 21-24).

8. Applicant's Sixth Amendment right to the effective assistance of counsel was violated when counsel: (1) failed to investigate fully all of the charges and evidence against Applicant; (2) failed to obtain expert testimony on issues dealing with the chemical make-up and manufacture of methamphetamines; (3) failed to consult with experts in the field of the chemical make-up and manufacture of methamphetamines; (4) relied only on the prosecution's expert witnesses on matters relating to the chemical make-up and manufacture of methamphetamines; (5) failed to inform Applicant that the prosecution had given notice of intent to file habitual criminal charges, when the prosecution had stated that no habitual criminal charges would be filed if he waived his preliminary hearing; (6) failed to request a postponement of the preliminary hearing to determine if the prosecutor's actions in coercing and/or inducing Applicant to waive his preliminary hearing constituted illegal and/or unethical behavior; (7) failed to argue that the prosecution had illegally coerced and/or induced Applicant's waiver of the preliminary hearing; (8) failed to adequately argue that the evidence used against Applicant was illegally seized; (9) failed to argue that the prosecution knew that Applicant's convictions were obtained through the use of perjured testimony; (10) failed to argue that the court knew that Applicant's convictions were obtained through the use of perjured testimony; (11) failed to adequately argue that the evidence against Applicant was insufficient to establish his guilt beyond a

reasonable doubt; (12) failed to adequately argue that the evidence used against Applicant was knowingly and intentionally destroyed by law enforcement personnel, thereby depriving him of the use of materially exculpatory evidence at trial in order to prove his "actual innocence"; (13) failed to subject the prosecution's case to meaningful adversarial testing;    (14) failed to use the photos taken from the refurbished 7-Eleven surveillance video to impeach and/or rebut Baxter's testimony regarding the suitcase; (15) failed to inform Applicant that the prosecution had violated his right to an impartial jury trial when it engaged in *ex parte* communications with the jury; (16) failed to adequately argue that the prosecution had violated his right to an impartial jury trial when it engaged in *ex parte* communications with the jury; (17) failed to inform Applicant that the trial judge violated his right to an impartial jury trial when he engaged in *ex parte* communications with the jury; (18) failed to adequately argue that the trial judge violated Applicant's right to an impartial jury trial when he engaged in *ex parte* communication(s) with the jury; (19) failed to argue that the trial judge violated Applicant's right to a jury trial on the charged Count 3: Possession Of Chemicals Or Supplies to Manufacture a Controlled Substance – Schedule II by utilizing facts and evidence not presented to the jury in order to substantially modify the sentencing range of the charged count; and, (20) met with Applicant only four times over the course of one year for a total of two hours.

In the Pre-Answer Response, Respondents conceded that the Application is timely under the one-year limitation period set forth in 28 U.S.C. § 2244(d).   (Docket No. 10 at 5-8).   Respondents further conceded that Applicant exhausted state court remedies for claim one.   (*Id.* at 13).   Respondents argued, however, that claim three was unexhausted and claims two, four, five, six, seven and eight were procedurally defaulted (*Id.* at 13-25).

In a previous Order, the Court dismissed claims two, four, five, six, and seven as procedurally defaulted.   (Docket No. 14).   The Court ordered Respondents to file an Answer addressing the merits of exhausted claims one and three.   The Court further deferred ruling on the applicability of a procedural bar to the twenty ineffective-assistance-of-counsel (IAC) allegations asserted in claim eight, under *Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309 (2012), pending receipt of the state court

4

record and Respondents' argument in the Answer as to whether any of the IAC

allegations have substantial merit.   (*Id.*).

The Court addresses claims one, three and eight below.

## II. APPLICABLE LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued

with respect to any claim that was adjudicated on the merits in state court unless the state

court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   The applicant bears the burden of proof under § 2254(d).   *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1).   *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003).   The threshold question the court must answer under § 2254(d)(1) is whether the

applicant seeks to apply a rule of law that was clearly established by the Supreme Court

at the time of the relevant state court decision.   *See Greene v. Fisher*, ___ U.S. ___, 132

S.Ct. 38, 44 (2011).   Clearly established federal law "refers to the holdings, as opposed

to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court

decision. *Id.* at 412.   Furthermore,

> clearly established law consists of Supreme Court holdings in cases where
> the facts are at least closely-related or similar to the case *sub judice*.

> Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).   If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1).   *See id*. at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.   *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or (b) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent. *Maynard* [*v. Boone*], 468 F.3d [665], 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).   "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08.   Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.   *See Williams*, 529 U.S. at 409-10.   "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

6

incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.   In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 562 U.S. at 101 (internal quotation marks omitted).   In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision and then ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Harrington*, 562 U.S. at 88 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 562 U.S. at 102.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The court reviews claims asserting factual errors pursuant to 28 U.S.C.

§ 2254(d)(2).   *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).

Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the

relevant state court decision was based on an unreasonable determination of the facts in

light of the evidence presented to the state court.   Pursuant to § 2254(e)(1), the court

must presume that the state court's factual determinations are correct and the petitioner

bears the burden of rebutting the presumption by clear and convincing evidence.   "The

standard is demanding but not insatiable . . . [because] '[d]eference does not by definition

preclude relief.'"   *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller- El v.

Cockrell*, 537 U.S. 322, 340 (2003)).

## B. *Pro Se* Litigant

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and

other papers liberally and hold[s] them to a less stringent standard than those drafted by

attorneys."   *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations

omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a *pro se*

litigant's "conclusory allegations without supporting factual averments are insufficient to

state a claim on which relief can be based."   *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th

Cir. 1991).   A court may not assume that an applicant can prove facts that have not been

alleged, or that a respondent has violated laws in ways that an applicant has not alleged.

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S.

519, 526 (1983).   *Pro se* status does not entitle an applicant to an application of different

rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

8

### III. ANALYSIS OF CLAIMS

#### A.  Claim One

For his first claim, Applicant asserts that his Fourth Amendment rights were violated when the trial court failed to suppress the contents of a suitcase that was seized illegally.   (Docket No. 1 at 4-7).

#### 1. controlling federal law

The Fourth Amendment protects against unreasonable search and seizure and is generally enforced through the exclusionary rule.   *See, e.g., Illinois v. Gates*, 462 U.S. 213, 254 (1983); *Stone v. Powell*, 428 U.S. 465, 482-87 (1976).   In *Stone*, the Supreme Court limited federal habeas review for alleged Fourth Amendment violations based on the Court's determination that any additional contribution gained from consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the associated costs.   428 U.S. at 493-94.   The Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."   *Stone*, 428 U.S. at 494.

The Supreme Court has not defined precisely the phrase "opportunity for full and fair litigation." *See Gamble v. State of Oklahoma*, 583 F.2d 1161, 1164 (10th Cir. 1978). In *Gamble*, the Tenth Circuit determined that the phrase:

> includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim.   It also includes the full and fair evidentiary hearing contemplated by *Townsend* [*v. Sain*, 372 U.S. 293 (1963)].   Furthermore, it contemplates recognition and

at least colorable application of the correct Fourth Amendment constitutional standards.

*Id.* at 1165.   "Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court willfully refuses to apply the correct and controlling constitutional standards."   *Id.*

### 2. state court proceedings

Applicant filed a motion to suppress the contents of a suitcase searched by the police outside of a 7-Eleven store.   (State Court R., Court File, at 66; *see also* 12/5/08 and 12/9/08 Hrg. Trans.).   Following an evidentiary hearing, the trial court denied the motion, reasoning that the evidence seized was in the officer's plain view.   (State Court R., Court File at 138-39).

Defense counsel subsequently filed a Motion to Reopen the Motions [Suppression] Hearing Based on New Evidence.   (State Court R., Court File at 150).   In the motion, counsel argued that footage of the surveillance video taken at the 7-Eleven "shows evidence that directly contradicts Officer Baxter's testimony at the motions hearing . . . in regards to the search conducted of the suitcase."   (*Id.* at 150). Specifically, counsel argued:

> During the motions hearing on December 9, 2008 a surveillance video was admitted into evidence for consideration in regards to outstanding motions. This video was a high speed copy and hard to view clearly. Counsel indicated at the end of the motions hearing and at pretrial readiness on February 17, 2009 a normal speed video was being obtained and may be relevant to the motions issues. On February 25, 2009 a normal speed copy of the video was provided to the office of defense counsel. Counsel did not received the video until February 26, 2009. A stipulated copy of the normal speed copy of the video is attached.

Footage of the video at normal speed shows evidence that directly contradicts Officer Baxter's testimony at the motions hearing. Specifically in regards to the search conducted of the suitcase.

The video clearly shows the suitcase is zipped when it is placed outside of the store, prior to Officer Baxter searching the suitcase. No one is shown unzipping the suitcase on the video. It also shows Officer Baxter putting on gloves prior to approaching the suitcase, further the video seems to show Officer Baxter touching and/or moving the suitcase. The video does not seem to show Officer Baxter coughing after being near the suitcase. The video does not seem to show a flashlight being used by Officer Baxter, which he testified to using at the motions hearing.

(*Id.* at 150-51).

The People argued in response that:

The evidence presented to this Court does not support a finding of a need to reopen the motions hearing for further evidence and delay the trial. This Court has sworn testimony from two separate officers that the suitcase was not touched or opened until after Officer Baxter observed the suspected methamphetamine lab. The evidence presented to the Court by the defendant can at worst be described as inconclusive and at best can be said to completely support the testimony of Officers Baxter and Petrucci. There is no evidence that has been presented to this Court that directly conflicts with the evidence the Court relied upon in denying the defendant's motion to suppress evidence.

(*Id.* at 158).

Following the trial court's *in camera* review of the "normal speed copy of the video,"

as well as still photos redacted from the surveillance tape, the trial court denied the motion

to re-open the suppression hearing on the first day of trial. (*Id.* at 162; 3/3/09 Hrg. Tr.;

Docket No. 10-2 at 12).1

---

1 The transcript of the trial court's oral ruling on the first day of trial, March 9, 2009, is not part of the state court record.   Counsel for Respondents represents in the Answer brief that he spoke to the state court clerk about the missing transcript.   (Docket No. 23 at 47, n.3).   The clerk responded that for some unknown reason, there is no transcript of that portion of the court proceedings on March 9, 2009. (*Id.*).

Applicant appealed the trial court's denial of the motion to suppress.   (Docket No. 10-4 at 13-20).

In *Fuller I,* the Colorado Court of Appeals set forth the following relevant background facts:

> Defendant carried the suitcase with him into the store. The suitcase was eventually placed outside the store directly next to the entrance. While it was sitting outside the store, the suitcase was unzipped approximately ten to twelve inches on top, leaving a gap one inch wide. Without physically manipulating the suitcase, but with the aid of a flashlight, Officer Baxter looked into the bag and saw paraphernalia that he recognized as being used in the manufacture of methamphetamine.

(Docket No. 10-2 at 3).   The state appellate court then reviewed the applicable Fourth Amendment principles:

> Searches and seizures of private property must be reasonable. U.S. Const. amend. IV. Warrantless searches and seizures are per se unreasonable unless they are justified by an established exception to the warrant requirement. *See id.*; Colo. Const. art. II, § 7; *People v. Kluhsman*, 980 P.2d 529, 534 (Colo. 1999). The plain view doctrine is one such established exception. *Kluhsman*, 980 P.2d at 534.
>
> Under the plain view doctrine, law enforcement officers may seize evidence that is plainly visible, without a proper search warrant, provided that "(1) the initial intrusion onto the premises was legitimate; (2) the police had a reasonable belief that the evidence seized was incriminating; and (3) the police had a lawful right of access to the object." *People v. Pitts*, 13 P.3d 1218, 1222 (Colo. 2000).

(*Id.* at 4).

Applying the above legal authority, the Colorado Court of Appeals rejected Applicant's claim on the following grounds:

Here, as defendant concedes, the officers' presence at the 7-Eleven store was legitimate.

To satisfy the second prong of the plain view doctrine, the incriminating nature of the evidence must be "immediately apparent" to the officer. [*People v.*] *Alameno*, 193 P.3d [830,] 834 [(Colo. 2008)]. An officer must have "probable cause to associate the item with criminal activity without conducting a further search." *Id.*

Although defendant argues the incriminating nature of the evidence was not immediately apparent because an officer needed to use a flashlight to see the contents of the bag, and the use of a flashlight constitutes a search, we disagree. *See Texas v. Brown*, 460 U.S. 730, 740 (1983) ("The use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection."). The trial court found that there was a large gap at the top of the suitcase, which allowed Officer Baxter, with the aid of a flashlight, to see inside the bag without opening it. The court further found that Officer Baxter, based on his prior law enforcement experience, immediately determined that the contents of the suitcase were incriminating upon viewing it with the aid of his flashlight and without opening it.   The record supports these findings, and we will not disturb them on appeal.

The plain view doctrine also requires the police to have a lawful right of access to the evidence seized. We are unpersuaded by defendant's argument that the police did not have lawful access to the suitcase because defendant denied ownership of it, and thus, there was no reason to view its contents.

The purpose of the lawful right of access requirement is to prevent law enforcement from using the plain view exception to seize evidence that, although in plain view from an officer's legitimate vantage point, would typically require the police to obtain a warrant before seizing the evidence. *See Horton v. California,* 496 U.S. 128, (1990) (police had lawful access to seize various weapons from the defendant's home where weapons were in plain view and police had a warrant to enter the home); . . . *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971) ("What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion . . . . The doctrine serves to supplement the prior justification . . . .").

Here, Officer Baxter had a lawful right of access to the suitcase, which sat outside the entrance of the store. At the time the officer looked in it, defendant had no reasonable expectation of privacy in the partially open

suitcase, which was left unguarded and readily accessible to any passerby. *See Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) (a reasonable expectation of privacy exists when a person has exhibited an actual, subjective expectation of privacy, and the expectation is one that society is prepared to recognize as reasonable). No warrant was required for the officer to look into the partially open suitcase without disturbing it. *See People v. Bostic*, 148 P.3d 250, 256 (Colo. App. 2006) (officer had lawful right of access to syringe where he could see it in drawer, which was partially open).

We conclude the contents of the suitcase were admissible under the plain view exception to the warrant requirement, and the trial court did not err in denying defendant's motion to suppress.

(*Id.* at 4-7).

### 3. analysis

The Court finds that the state trial and appellate court proceedings sufficed to provide Applicant with an opportunity for full and fair litigation of his Fourth Amendment claim.   *See Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir.1999) (holding that petitioner was not entitled to habeas review of Fourth Amendment claim where petitioner's trial counsel informed the trial court of the factual basis for a Fourth Amendment claim, appellate counsel presented the issue to the state appellate court on direct appeal, and the state courts "thoughtfully considered the facts underlying petitioner's Fourth Amendment claim" but rejected it on the merits by applying appropriate Supreme Court precedents).   The state courts relied on United States Supreme Court Fourth Amendment precedent in resolving Applicant's claim.   (*See* State Court R., Court File, at 138 (citing *People v. Pitts*, 13 P.3d 1218, 1222 (Colo. 2000) (which in turn relied on U.S. Const. amend. IV and *Arizona v. Hicks*, 480 U.S. 321, 326-28 (1987)); Docket No. 10-2, at 4-7 (citing United States Supreme Court Fourth Amendment jurisprudence)).

14

Applicant's mere disagreement with the results of the suppression hearing and the motion to reopen that hearing does not demonstrate that the state courts failed to recognize, or willfully ignored, controlling legal standards.   Even if the trial court did not make any specific factual findings or legal conclusions in denying the motion to reopen the suppression hearing, the court was entitled to rely on its original order denying the motion to suppress, after the court reviewed the slower speed video surveillance tape and still shots and determined that there was nothing in that footage to warrant reopening the hearing.

In the Application, Mr. Fuller rehashes arguments that were raised in his opening brief on direct appeal (*see* Docket No. 10-4 at 17-20), and which were expressly rejected by the state appellate court based on application of Fourth Amendment principles.   His contention that the state appellate court's ruling was incorrect under *People v. Grana*, 527 P.2d 543 (Colo. 1974) (concluding that seized evidence was not in 'plain view,' given that it "was found within a zippered compartment within a closed flight bag") and *People v. Counterman*, 556 P.2d 481, 483 (1976) (recognizing that "[t]he owner clearly had an expectation of privacy with regard to his sealed knapsack which was sufficient to invoke constitutional protections against unreasonable police intrusion.") are not well-founded. *Grana* and *Counterman* are inapposite here because the state courts found that "there was a large gap on the top of the suitcase," which allowed the police officer, with the aid of a flashlight to see inside the bag without opening it.   (State Court Record, Court File, at 138; *see also* Docket No. 10-2 at 5, citing *Texas v. Brown*, 460 U.S. at 740).

The Court finds that Applicant is not entitled to federal habeas review for his Fourth Amendment claim because the state courts provided him an opportunity for full and fair litigation of that claim.   Claim one will be dismissed.

### B.   Claim Three

In his third claim, Applicant contends that there was insufficient evidence to prove beyond a reasonable doubt that he knew the suitcase contained chemicals for making methamphetamine.   (Docket No. 1, at 9-11).

### 1. controlling federal law

A constitutional challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979).   Evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, _____ U.S. _____, 132 S.Ct. 2060, 2064 (2012) (quoting *Jackson*, 443 U.S. at 319) (emphasis in the original).   The court looks at both direct and circumstantial evidence in determining the sufficiency of the evidence.   *See Lucero v. Kerby,* 133 F.3d 1299, 1312 (10th Cir. 1998).   A federal habeas court's review under *Jackson* is "sharply limited, and a court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004) (quotations and alterations omitted).   *See also Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (in reviewing the sufficiency of the evidence, the

federal habeas court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'") (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

"[F]ederal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."   *Johnson*, 132 S.Ct. at 2064.

### 2. state court proceedings

In *Fuller I*, the Colorado Court of Appeals applied a state law standard similar to *Jackson, see* Docket No. 10-2 at 8, and rejected Applicant's claim on the following grounds:

> Defendant was charged under section 18-18-405(1)(a), C.R.S. 2011. As pertinent here, that section provides that a person commits a second degree felony if, as a second offense under the statute, he or she possesses one or more chemicals, supplies, or equipment with the intent to manufacture a controlled substance.

> Defendant contends the prosecution failed to prove knowing possession and intent to manufacture. A finding of knowing possession and intent to manufacture can be premised on circumstantial evidence. *People v. Calise*, 179 Colo. 162, 164-65, 498 P.2d 1154, 1156 (1972); *People v. Atencio*, 140 P.3d 73, 75 (Colo. App. 2005).

> The prosecution presented the following evidence at trial. The night before police arrested defendant, he stayed at the house where Matthew Lemmo resided. At some point during defendant's stay, Lemmo's wallet went missing. He confronted defendant about the missing wallet, after which defendant decided to leave the house. The first time Lemmo ever saw the suitcase at issue was when defendant gathered "[defendant's] things," including the suitcase, and left the house. A few minutes later, Officer Pertucci saw defendant carrying the suitcase while walking down the street away from Lemmo's residence.

Defendant went to a nearby 7-Eleven store and was carrying the suitcase when he entered the store. A store clerk saw defendant open the suitcase inside the store and pull out his tattoo case from inside it. The clerk testified that defendant was behaving in a way that was "protective," "defensive," and "paranoid" about his suitcase.

Lemmo had followed defendant to the store to again confront him about his missing wallet, which he believed defendant had stolen. During this confrontation, Lemmo placed the suitcase outside the entrance to the store.

Officer Baxter testified that after he arrived at the store, he approached the suitcase and observed that it contained a mobile methamphetamine lab with all of the equipment and supplies necessary to produce methamphetamine.

The prosecution's expert witness also testified that there was no legitimate purpose to have the specific items found in the suitcase (including Coleman fuel, glassware with connective tubing, a turkey baster, muriatic acid, hydrogen peroxide, hydroiodic acid, and an aqueous solution with pseudoephedrine) together in one place, except to make methamphetamine.

We conclude that the circumstantial evidence presented, taken as a whole and in the light most favorable to the prosecution, was sufficient to support a finding beyond a reasonable doubt that defendant knew of the contents of the suitcase and intended to manufacture methamphetamine. Thus, the prosecution presented sufficient evidence to convict defendant of this offense.

(*Id.* at 8-11).

### 3. analysis

The state appellate court's factual findings are presumed correct in this § 2254

proceeding and are supported by the state court record.   (*See* State Court R., 3/9/09

Trial Tr., Petrucci, Lemmo,and Tiller testimony; 3/10/09 Trial Tr., Baxter and Jorgenson

testimony).   Applicant does not point to any clear and convincing evidence to rebut those

findings.   Instead, he argues that the Colorado Court of Appeals ignored the Colorado

Supreme Court's decision in *People v. Calise,* 498 P.2d 1154, 1156 (1972), which recognized that "in a circumstantial evidence case the evidence must be consistent with guilt and inconsistent with any reasonable hypothesis of innocence."   (*See* Docket No. 1 at 10).   However, Applicant's reliance on this portion of *Calise* is misplaced because it was rejected by the following language in *People v. Bennett*, 515 P.2d 466 (Colo. 1973): "[W]e now cast aside as outmoded and as confusing the requirement that the prosecution's evidence, when wholly circumstantial, must exclude every reasonable hypotheses other than that of guilt and no longer require such an instruction or such a test to be applied."   *Id.* at 469.   *See also People v. Marques*, 520 P.2d 113, 117 (Colo. 1974) (stating that when the sufficiency of the evidence is challenged on appeal, the question is whether a jury could reasonably conclude that the defendant's guilt of the charged offense was proven beyond a reasonable doubt, regardless of whether the evidence is direct or circumstantial).

Applicant also cites *People v. Atencio*, 140 P.3d 73, 75 (Colo. App. 2005), for the proposition that when a person is not in exclusive possession of the premises in which chemicals or supplies to manufacture a schedule II controlled substance are found, an inference of possession may not be drawn unless there is evidence tending to buttress the inference of possession.   (Docket No.1 at 11).   Applicant argues that there was no evidence presented at trial that "he exercised exclusive possession of the suitcase or that he had knowledge of its contents." (*Id.*).   Instead, the evidence was that Applicant carried the suitcase into the 7-Eleven, but Mr. Lemmo carried it back outside.   (*Id.*).

19

Even though Mr. Lemmo exercised temporary control over the suitcase in placing it outside the 7-Eleven store, other evidence was consistent with the inference that the suitcase belonged to Applicant, including:   Mr. Lemmo's testimony that had never seen the suitcase until Applicant carried it with him when leaving Mr. Lemmo's home earlier that day; Officer Petrucci's testimony that he saw Applicant carrying the suitcase while walking down the street away from Lemmo's residence; the store clerk's testimony that Applicant entered the 7-Eleven carrying the suitcsase, pulled out a tattoo case from inside it, and was acting "protective," "defensive," and "paranoid" about the suitcase.   (*See* State Court R., 3/9/09 Trial Tr.).   The circumstantial evidence at trial supported the jury's finding that Applicant possessed one or more chemicals, supplies, or equipment with the intent to manufacture a controlled substance.

The state appellate court's determination that the evidence was legally sufficient to support Applicant's conviction for violating § 18-18-405(1)(a), C.R.S., was not an unreasonable application of the *Jackson* standard, nor was it based on an unreasonable determination of the facts.   Therefore, Applicant is not entitled to federal habeas relief for claim three.

### C.   Claim Eight

In claim eight, Applicant asserts twenty sub-claims based on an alleged violation of his Sixth Amendment right to the effective assistance of counsel.   (Docket No. 1 at 25). Applicant did not raise his IAC allegations before the state trial court in the state post-conviction proceeding.   Instead, he asserted the claims for the first time on appeal in *Fuller II*.   The Colorado Court of Appeals refused to address the claims on the

procedural ground that Applicant had failed to first raise them in the trial court.   (Docket

No. 10-3 at 5-6).   Respondents maintain that Applicant defaulted all of the allegations in

claim eight in the states courts pursuant to an adequate and independent state

procedural rule.   (Docket No. 10 at 24).

In the Order to Dismiss in Part (Docket No. 14), the Court deferred ruling on the

Respondents' assertion of the procedural default defense with respect to the Applicant's

IAC claims, under *Martinez v. Ryan*, because Applicant was not appointed counsel in his

initial state post-conviction proceedings.   In *Martinez*, the Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel
> must be raised in an initial-review collateral proceeding, a procedural
> default will not bar a federal habeas court from hearing a substantial claim
> of ineffective assistance at trial if, in the initial-review collateral proceeding,
> there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320.2   To constitute cause to excuse a procedural default, Applicant must show

that the procedurally defaulted IAC claim is "substantial"— i.e., has "some merit." *Id.* at

1318.   A claim that is "wholly without factual support" is not substantial.   *Id.* at 1319.

### 1.  controlling federal law

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must

show both that (1) his counsel's performance was deficient (i.e., that identified acts and

omissions were outside the wide range of professionally competent assistance), and (2)

he was prejudiced by the deficient performance (i.e., that there is a reasonable probability

---

2 Respondents object to the Court's *sua sponte* consideration of the potential applicability of *Martinez* to excuse the Applicant's procedural default of his IAC claims. (Docket No. 23 at 28-32). Respondents' arguments are duly noted.   However, because the state court record demonstrated that Applicant was not appointed counsel to assist him with his state post-conviction motion in the district court (*see* Docket No. 10-1 at 8), the Court deemed it prudent, in an abundance of caution, to take *Martinez* into consideration in ruling on the procedural default defense.

that but for counsel's unprofessional errors the result would have been different).

*Strickland v. Washington*, 466 U.S. 668 (1984).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689).   "With respect to prejudice, . . . '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable." *Strickland*, 466 U.S. at 693. I need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one.   *Id.* at 697.

## 2.  analysis

### a.  sub-claims 1, 11, 13 and 20

Applicant asserts that defense counsel was ineffective when she: failed to investigate fully all of the charges and evidence against Fuller (sub-claim 1); failed to adequately argue that the evidence against Fuller was insufficient to establish his guilt beyond a reasonable doubt (sub-claim 11); failed to subject the prosecution's case to meaningful adversarial testing (sub-claim 13); and, met with Applicant only four times over the course of one year for a total of two hours (sub-claim 20).   (Docket No. 1 at 25).

Claims 1 and 13 are wholly conclusory, without any supporting factual allegations, which is insufficient to state a viable IAC claim.   *See Cummings v. Sirmons*, 506 F.3d 1211, 1228-29, 33-34 (10th Cir. 2007) (allegations based on unsubstantiated assertions of fact are not sufficient to satisfy *Strickland*); *see also United States v. Fisher*, 38 F.3d

1144, 1147 (10th Cir. 1994) (ineffective assistance claim fails "where [petitioner's] allegations are merely conclusory in nature and without supporting factual averments").

Claim 11 is refuted by the state court record.   Defense counsel moved for a judgment of acquittal at the close of the prosecution's case and argued in closing that the prosecution failed to prove that the suitcase belonged to Applicant and that he knew what was inside.   (State Court R., 3/10/09 Trial Tr. at 125, 183-195).   Applicant does not explain what else defense counsel could have argued that would likely have resulted in a different outcome at trial.   He has thus failed to show that counsel's performance was deficient, or that any deficiency prejudiced him at trial.

Claim 20 is without merit because Applicant has not demonstrated a reasonable probability that he would have been acquitted if defense counsel had met with him more often and for longer periods.

The Court finds and concludes that IAC sub-claims 1, 11, 13 and 20 lack merit. Therefore, the claims are not substantial under *Martinez* and will be dismissed as procedurally barred.

### b.  sub-claims 2, 3 and 4

In sub-claims 2, 3, and 4, Applicant contends that defense counsel was ineffective in failing to consult with experts and obtain expert testimony on issues dealing with the chemical make-up and manufacture of methamphetamines; instead, defense counsel relied on the prosecution's expert witness.   (Docket No. 1 at 25).   Applicant does not expound on these claims in his § 2254 Application.

Conclusory allegations are insufficient to support an IAC claim.   *See Cummings v.*

23

*Sirmons*, 506 F.3d 1211, 1228-29, 33-34 (10th Cir. 2007) (allegations based on

unsubstantiated assertions of fact are not sufficient to satisfy *Strickland*); *see also United*

*States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (ineffective assistance claim fails

"where [petitioner's] allegations are merely conclusory in nature and without supporting

factual averments").   Applicant fails to set forth specific facts to explain how defense

counsel's consultation with and retention of an expert would have created a reasonable

probability of acquittal.   Mere speculation about a more favorable outcome cannot

sustain a Sixth Amendment claim.   *See Strickland*, 466 U.S. at 693.

Nonetheless, the Court will consider the specific arguments raised by Applicant in

his opening brief on appeal in the state post-conviction proceeding.   Applicant

maintained that had defense counsel consulted an expert, counsel could have asserted,

on cross examination of the State's chemist, that (1) because the chemist described the

suitcase as "remnants' of a methamphetamine lab, Applicant could not have had "intent"

to manufacture because "intent" refers to plans for the future; (2) the suitcase did not

contain every ingredient necessary to actually make methamphetamine; and, (3) one of

the chemicals in the suitcase was determined to be water, not fuel as the State's chemist

testified.   (Docket No. 10-9 at 23).

With regard to Applicant's first contention, his characterization of the State

chemist's testimony is incorrect.   The chemist testified that the items in the suitcase were

"used in the manufacture of, or were made available for the manufacture of

methamphetamine."   (State Court R., 3/9/09 Trial Tr., at 116-117).   The State's expert

also testified that the suitcase contained every chemical needed to make

24

methamphetamine, except for phosphorous.   (*Id.* at 117).   Nothing in the State

chemist's testimony negated Applicant's intent to manufacture a schedule II controlled

substance.   Applicant has not shown how he was prejudiced by defense counsel's

failure to consult with an expert.

Applicant's second contention is also contradicted by the state court record, which

reflects the following colloquy between defense counsel and the State's chemist on cross

examination:

> Q.   You stated there was no phosphorous found when you tested these
> samples; is that correct?
>
> A. That's correct.   I did not analyze anything that had phosphorous in it.
> Q.   That's a necessary ingredient, I guess, is the word you used, to make
> methamphetamine?
>
> A.   In generation of HI, it is a necessary ingredient, yes.

(*Id.* at 118-119).   Because defense counsel did cross examine the State's expert about

the contents of the suitcase, Applicant has failed to show how he was prejudiced by

counsel's failure to consult with an expert.

Finally, Applicant contends that if defense counsel had consulted experts, she

could have impeached the State's expert with the fact that one of the alleged chemicals in

the suitcase – Coleman fuel – was in fact water.   The Court finds no support in the record

for Applicant's assertion.   Although the State's expert testified that he did not actually

extract and test the contents of the Coleman Fuel, there is nothing in the record to

suggest that the contents were water.

Moreover, even if defense counsel had retained an expert to testify that the

contents of the Coleman fuel tank were actually water, there is no reasonable probability

that the testimony would have affected the verdict.   The state statute under which

Applicant was charged required that a defendant "possess *one or more* chemicals or

supplies or equipment with the intent to manufacture a controlled substance."

§ 18-18-405(1)(a), C.R.S. (2008) (Emphasis supplied).   The jury convicted Applicant

based on the contents of the suitcase, even though no phosphorous was found, because

the suitcase contained other items and ingredients necessary to manufacture

methamphetamine, including hydrochloric acid, pseudoephedrine, other chemicals,

glassware with rubber tubing coming out of it, a turkey baster and glass jars.   (State

Court R., 3/10/09 Trial Tr. at 101-14).

The Court finds and concludes that IAC sub-claims 2, 3 and 4 lack merit.

Therefore, the claims are not substantial under *Martinez* and will be dismissed as

procedurally barred.

### c.  sub-claims 5, 6 and 7

Applicant asserts that defense counsel was ineffective in failing to: inform him that

the prosecution had given notice of intent to file habitual criminal charges, when the

prosecution had stated that no habitual criminal charges would be filed if he waived his

preliminary hearing (sub-claim 5); request a postponement of the preliminary hearing to

determine if the prosecution's actions in coercing and/or inducing Applicant to waive his

preliminary hearing constituted illegal and/or unethical behavior (sub-claim 6); and, in

failing to argue that the prosecution had illegally coerced and/or induced Applicant's

waiver of the preliminary hearing (sub-claim 7).

Contrary to Applicant's assertions, the state court record reflects that the prosecution's offer to forgo habitual criminal charges was contingent upon Applicant's acceptance of a plea, not his waiver of the preliminary hearing.   At a September 11, 2008 pre-trial hearing, the state district court inquired about the status of plea negotiations. (State Court R., 9/11/08 Hrg. Tr. at 3).   The prosecutor explained that he and defense counsel had an "agreement" that the prosecution would "hold off" on filing habitual charges until the disposition hearing, which was the next scheduled court appearance. (*Id.*).   The prosecutor further stated that "if we do not have a disposition at the next court date those charges, in all likelihood, will be filed and we'll proceed to trial."   (*Id.*).   The trial court told Applicant that he had "a lot to discuss with [his] attorney," and Applicant confirmed that he understood.   (*Id.* at 3-4).   Applicant then waived a preliminary hearing. (*Id.* at 5).   Prior to the waiver, defense counsel informed the trial court that she had discussed the waiver with Applicant "at length" the night before.   (*Id.*).   The court gave its own advisement and Applicant confirmed that he understood and wished to enter a waiver.   (*Id.* at 4-5).   The trial court found that Applicant was knowingly, intelligently and voluntarily waiving his right to a preliminary hearing.   (*Id.*at 5).   The case was set for plea disposition on October 21, 2008.   (*Id.*).

The parties appeared in court again on October 21, 2008 and informed the court that they had failed to reach a plea disposition.   (State Court R., 10/21/08 Hrg. Tr. at 2). The prosecution stated that habitual criminal charges had been filed that morning.   (*Id.*). Defense counsel acknowledged "[w]e were aware that was coming, Judge."   (*Id.*).

Because the underlying premise of IAC sub-claims 7, 8 and 9 is refuted by the state court record, the claims are not substantial under *Martinez*.   *See Lafler v. Cooper*, 123 S.Ct. 1376, 1386 (2011) (recognizing that an IAC claim fails if the underlying premise on which it is based lacks merit).   Moreover, any claim by Applicant that he was unaware that habitual criminal charges may be filed against him if he rejected the proffered plea agreement is also belied by the state court record.   Applicant was present in court for both the September 11 and October 21, 2008 hearings.    As such, IAC sub-claims 7, 8 and 9 will be dismissed as procedurally barred.

### d. sub-claim 8

In sub-claim 8, Applicant contends that counsel failed to adequately argue that the evidence used against him was seized illegally.   (Docket No. 1 at 25).   In his opening brief on appeal in the state post-conviction proceeding, Applicant asserted that counsel rendered deficient performance by failing to play "in open court" a video of the suitcase being carried in and out of the 7-Eleven.   (Docket No. 10-9 at 22).   Applicant maintained that the suitcase was not open when it was placed outside, contrary to the police officer's testimony at the suppression hearing.   Applicant further asserted in his state court appeal that defense counsel should have accused the police officer witness of "perjury" by arguing that the video contradicted the officer's testimony.   (*Id.*).

As discussed previously, defense counsel filed a motion to reopen the suppression hearing before trial.   *See* Section III.A., *supra.*   Counsel contended in the motion that "footage of the video at normal speed shows evidence that directly contradicts Officer Baxter's testimony at the motions hearing . . . in regards to the search conducted of the

suitcase." (*Id.* at 150).   Counsel further argued:

> The video clearly shows the suitcase is zipped when it is placed
> outside of the store, prior to Officer Baxter searching the suitcase. No one is
> shown unzipping the suitcase on the video. It also shows Officer Baxter
> putting on gloves prior to approaching the suitcase, further the video seems
> to show Officer Baxter touching and/or moving the suitcase. The video does
> not seem to show Officer Baxter coughing after being near the suitcase.
> The video does not seem to show a flashlight being used by Officer Baxter,
> which he testified to using at the motions hearing.
>
> In order to ensure Mr. Fuller's constitutional rights under the Fourth
> Amendment of the United States Constitution and Article II §7 of the
> Colorado Constitution, the motions hearing evidence must be reopened
> with a hearing and the opportunity for cross examination.

(*Id.* at 151).

The state court record demonstrates that defense counsel zealously argued to

reopen the suppression hearing based on the slower speed video surveillance footage.

Moreover, Applicant does not explain why the trial court would have ruled differently had

the court played the surveillance tape in open court, as opposed to reviewing it in

chambers.   Nor does Applicant explain how accusing the police officer of "perjury," in

addition to arguing that the videotape contradicted the officer's testimony, would have

resulted in a favorable outcome.

The Court has reviewed the copy of the surveillance videotape that was submitted

by Respondents as part of the state court record, as well as the video still shots.   (*See*

State Court R., at Docket No. 24 (surveillance video); State Court R., 3/9/09 Hrg. Exhibits

(video still shots); *see also* Docket No. 23-4).   The video footage is inconclusive as to

whether suitcase was partially unzipped (as the officer testified), or fully zipped, when it

was placed outside the 7-Eleven store.   (*See id*).

The Court finds and concludes that IAC sub-claims 7, 8 and 9 lack merit. Consequently, the claims are not substantial under *Martinez* and will be dismissed as procedurally defaulted.

### e. sub-claims 9 and 10

In sub-claims 9 and 10, Applicant asserts that defense counsel failed to argue that the prosecution and the state trial court knew his convictions were obtained through the use of perjured testimony.   (Docket No. 1 at 25).   In his opening brief on appeal in the state post-conviction proceeding, Applicant asserted that: (1) the surveillance videotape from the 7-Eleven store conclusively disproved the police officer's testimony that the suitcase was partially opened when he approached it; (2) the police officer therefore had committed perjury when he testified to that effect; and, (3) the trial court and prosecutor therefore knowingly allowed false testimony to be presented at trial, resulting in Applicant's conviction .   (Docket No. 10-9 at 22).

As stated above, the surveillance videotape is inconclusive as to whether the suitcase was partially open or fully zipped when the police officer approached it. Accordingly, I find and conclude that IAC sub-claims 9 and 10 lack merit.   Because the claims are not substantial IAC claims under *Martinez*, they will be dismissed as procedurally barred.

### f.  sub-claim 12

In sub-claim 12, Applicant argues that defense counsel failed to adequately argue that the evidence used against him was knowingly and intentionally destroyed by law enforcement personnel, thereby depriving him of the use of materially exculpatory

evidence at trial in order to prove his "actual innocence."   (Docket No. 1 at 25).   In his

opening brief on appeal in the state post-conviction proceeding, Applicant asserted that

defense counsel failed to argue that the police lacked standard operating procedures

concerning the destruction of evidence; and, defense counsel should have argued that

Applicant's fingerprints would not have been found on the items inside the suitcase if the

police had tested them.   (Docket No. 10-9 at 24-25).

The state court record demonstrates that defense counsel did make the

arguments urged by Applicant.   In November 2008, approximately four months before

trial, defense counsel filed a "Motion to Dismiss All Counts, or in the Alternative, Suppress

Evidence Based on an Illegal Destruction of Evidence."   (State Court R., Court File, at

92-95).   In the motion, counsel argued that "[f]ailure to employ systemic procedures to

preserve evidence constitutes a violation of the defendant's due process rights."   (*Id.* at

95).   Counsel further maintained that the suitcase and its contents had apparent

exculpatory value before they were destroyed because "at no time did Mr. Fuller indicate

that he owned the suitcase, nor did he indicate that he knew what was inside of the

suitcase."   (*Id.* at 93).   Counsel also asserted that "there is a clear possibility that some

of the items destroyed could have been tested for fingerprints or DNA."   (*Id.*).

The trial court rejected Applicant's motion on the following grounds:

> In this case, the responding members of the Task Force preserved thirteen
> samples of all of the substances located on items in the suitcase for formal
> chemical testing that are currently available for the defense to test. They
> further photographed all containers and all items contained in the suitcase
> as well as the suitcase itself. The items were then collected and destroyed
> by the contracting hazardous materials company. The items were
> destroyed due to the hazardous nature of many of the chemicals associated

with methamphetamine production. According to the prosecutions lay and
expert witnesses, many chemicals associated with the production of
methamphetamine are known to be both highly combustible and to contain
highly noxious fumes.

This court finds and concludes that the defendant has failed to satisfy the
second prong of the [*People v.I] Greathouse*, [742 P.2d 334 (Colo. 1987)]
test requiring that the evidence had exculpatory value that was apparent
before it was destroyed. This court agrees with the prosecution that a mere
claim by the defendant that the evidence may have had some possible
evidentiary value in terms of fingerprint testing or serology testing is not
enough to find a due process violation. The preservation of the suitcase and
other items destroyed by law enforcement would not have been dispositive
of the issue of whether the defendant knew the contents of the suitcase.
Further, there is no evidence to support an allegation of bad faith on behalf
of law enforcement. To the contrary, law enforcement followed procedures
similar to that of the DEA and EPA. Additionally three different eye
witnesses, including a Greeley Police Officer, observed the defendant in
direct possession of the suitcase and in fact carrying it around. These
observations are further supported by surveillance video which clearly
shows the defendant in possession of the suitcase, thus foreclosing any
argument that he was not in possession of the suitcase in which the
suspected methamphetamine lab was found.

(*Id.* at 141-42).

Applicant has not demonstrated that the trial court would have ruled differently had

counsel presented any additional arguments in support of the motion to suppress based

on the alleged intentional and illegal destruction of evidence.   As such, IAC sub-claim 12

lacks merit, is not substantial under *Martinez*, and, therefore, will be dismissed as

procedurally barred.

### g.  sub-claim 14

In sub-claim 14, Applicant asserts that defense counsel should have used the still

shots from the enhanced surveillance videotape of the 7-Eleven to impeach and/or rebut

Officer Baxter's testimony that the suitcase was partially open when he approached it and looked inside.   (Docket No. 1 at 25).

Officer Baxter testified at the suppression hearing and at trial that the suitcase was unzipped about 10-12 inches and the opening was about one inch wide.   (State Court R., 12/9/08 Hrg. Tr. at 11; 3/10/09 Trial Tr. at 29-30).   The officer's testimony would not have been refuted by the still shots of the videotape (Docket No. 23-4) because the quality of the videotape and the distance of the surveillance camera from the suitcase did not allow for a conclusive determination that the suitcase was fully zipped when Officer Baxter approached it and looked inside.   As such, counsel did not perform deficiently in failing to use the still shots to attempt to impeach Officer Baxter.   Further, there is no reasonable probability that the outcome of the suppression hearing would have been different – i.e., that the contents of the suitcase would have been suppressed and no admitted as evidence at trial – had counsel attempted to impeach Officer Baxter with the still shots.

The Court finds and concludes that IAC sub-claim 14 lacks merit.   Therefore, the claim is not substantial under *Martinez* and will be dismissed as procedurally barred.

### h.   sub-claims 15, 16, 17 and 18

Applicant asserts in sub-claims 15 and 17 that defense counsel failed to inform him that the prosecution and trial court violated his right to an impartial jury trial when they engaged in *ex parte* communications with the jury after trial.   (Docket No. 1 at 25).   In sub-claims 16 and 18, he argues that defense counsel failed to argue adequately that the prosecution and trial court violated his right to an impartial jury trial when the prosecutor and trial court engaged in *ex parte* communications with the jury after trial.   (*Id.*).

33

After Applicant's trial, defense counsel filed a motion to access the jurors' contact information to ask them if they had, during trial, been inadvertently exposed to Applicant's prior criminal history.   (Docket No. 10-9 at 19-20; *see also* State Court R., Court File, at 246-47).   The trial court granted the motion, but mailed a letter to the jurors stating that (1) defense counsel was requesting their contact information in order to have an investigator contact them; (2) as the court had orally instructed them prior to discharge, they did not have to talk to anyone about their jury service if they did not want to; and (3) if they did not want to be contacted about their service in this case, they could inform the jury commissioner of that, in writing, within twenty-one days.   (State Court R., Court File, at 248-49). The court's order required defense counsel to wait until the twenty-one days had run before contacting the jurors.   (*Id.*).

Defense counsel filed an objection asserting that the letter to the jurors was an improper ex parte communication because Applicant had not been given a chance to object to the letter before it was mailed.   (*Id.* at 250-51).   Defense counsel further maintained that the trial court's letter had "chilled" Applicant's "right to determine if his conviction is proper."   (*Id.* at 251).

After the twenty-one days had passed, the trial court informed the parties in a written order that only four of the thirteen jurors had requested that they not be contacted. (Docket No. 23-8).   Attached to the order were the four jurors' letters, along with a complete juror contact list.   (*Id.*).

In his opening brief on appeal in the state post-conviction proceeding, Applicant argued that defense counsel had failed to "steadfastly pursue arguing" that the trial court had committed misconduct by mailing the letter to the jurors.   (Docket No. 10-9 at 25).

The state trial courts are required to instruct jurors upon their discharge that it is entirely the jurors' decision whether to talk to anyone about the case or their service as a juror.   *See People v. Harlan*, 109 P.3d 616, 636 (Colo. 2005) (citing CJI–Crim. 1:06).   In addition, one of the purposes of Colorado Rule of Evidence 606(b)(addressing inquiries into the validity of a verdict) is to protect jurors from harassment and coercion.   *See id.*; *see also Stewart v. Rice*, 47 P.3d 316, 322 (Colo. 2002).

Applicant cites no legal authority for the proposition that a trial court errs in mailing a letter to jurors containing a written version of the same instruction that the jury received from the trial judge upon discharge of their jury service.   Consequently, Applicant has failed to demonstrate that counsel's failure to more steadfastly pursue her objection fellow below an objective standard of reasonableness.   Further, Applicant cannot establish that he was prejudiced as a result of counsel's alleged failure to press the issue.   Nine of the thirteen jurors agreed to be contacted by defense counsel about their service in Applicant's case.   Applicant does not explain why access to nine of the jurors was insufficient to enable the defense to determine whether the jury was accidentally exposed to Applicant's criminal history.

The Court finds and concludes that IAC sub-claims 15, 16, 17 and 18 lack merit, are not substantial under *Martinez*, and, therefore, will be dismissed as procedurally barred.

### i.  sub-claim 19

For sub-claim 19, Applicant asserts that defense counsel should have argued that the trial judge violated his right to a jury trial with regard to Count 3 of the Information, by utilizing facts and evidence not presented to the jury "in order to substantially modify the sentencing range of the charged count."   (Docket No. 1 at 25).

Count 3 of the Information charged Applicant with possession of chemicals or supplies with intent to manufacture a controlled substance – schedule II, in violation of § 18-18-405(1), (2)(a)(I)(A), C.R.S. (2008).   (State Court R., Court File, at 15).   A sentence enhancer charged that this was Applicant's second offense involving drug distribution or manufacturing.   (Docket No. 10-1, at 2-3).   Applicant was also charged as a habitual offender with eight separate prior felony convictions.   (State Court R., Court File, at 40; *see also id.* at 50).

The jury found Applicant guilty of the substantive offense.   (State Court R., Court File, at 209).3   At the sentencing hearing, the trial court determined that the conviction was Applicant's second offense.   (State Court R., 6/11/09 Sentencing Hrg. Tr., at 48-49, 51).   The court also found that the prosecution had proven Applicant's eight prior felony convictions.   (*Id.* at 51).

The second offense enhancer elevated the offense from a class 3 felony to a class 2 felony, *see* § 18-18-405(2)(a)(I)(B), C.R.S. (2008), and therefore increased the related maximum presumptive range of imprisonment from 16 to 24 years.   *See* § 18-1.3-401(1)(a)(V)(A) (2008).   The habitual criminal enhancer then required the court

---

3 The Count was re-numbered as Count 1 for purposes of the jury instructions and verdict forms.

to impose a sentence of four times the maximum of the applicable presumptive range. *See* § 18-1.3-801(2) (2008).   The court imposed a mandatory sentence of 96 years. (State Court R., 6/11/09 Sentencing Hr. Tr., at 61).

Applicant maintains that counsel should have argued that his right to a jury trial was violated when the sentencing court, rather than the jury, found that the second enhancer had been proven.   However, there is no constitutional right to a jury determination of whether a prior conviction occurred.   *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond that prescribed by the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *see also Butt v. Hartley*, No. 10-1062, 378 F. App'x 822, 826 (10th Cir. May 18, 2010) (unpublished) (recognizing that *Apprendi* and *Blakely v. Washington*, 542 U.S. 296 (2004) "clearly exempt judicial fact-finding regarding prior convictions from the rule that only a jury may constitutionally find facts which increase a defendant's maximum sentence").

Consequently, the Court finds that IAC sub-claim 19 lacks merit.   Therefore, the claim is not substantial under *Martinez* and will be dismissed as procedurally barred.

## IV.  ORDERS

For the reasons discussed above, it is

ORDERED that the Motion for Leave to File [Reply] Out of Time for Excusable Neglect/Justifiable Excuse (Docket No. 37), filed on January 17, 2017, is GRANTED.   It is

FURTHER ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 1), filed, *pro se*, by Applicant, Larry Fuller, April 19, 2016, is DENIED and this action is DISMISSED WITH PREJUDICE.   It is

FURTHER ORDERED that no certificate of appealability shall issue because Applicant has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000).   It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.   The Court certifies pursuant to 28 U.S.C. ' 1915(a)(3) that any appeal from this order would not be taken in good faith   *See Coppedge v. United States*, 369 U.S. 438 (1962).   If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Dated January 18, 2017, at Denver, Colorado.

BY THE COURT:

_____

R. BROOKE JACKSON
United States District Judge